May it please the court. My name is Tim Dillon. I represent the appellant and plaintiff in this case, Gary Kremen. I respectfully request to reserve two minutes of my time for rebuttal. Your Honor, I think we can all, Your Honors, we can all agree that the principal bad actor in this case is the debtor, Stephen Cohen, a five-time convicted felon, serial fraudster. Counsel, we know all that. We know we're dealing with a ne'er-do-well, but the question that I'd like you to focus on is what what evidence do you have to show that the transfer transfers were from Stephen Cohen in aid of hindering, delaying creditors from the transfer? I can tell you in detail and extensive, first, Your Honor, that it presupposes that our pleading requires evidence of a direct transfer, which is one of the concerns we had with the lower court. However, addressing the court directly through this maze of similar mailboxes, evidence from Google, for instance, that the Michael Cohen email account that was responsible for PayPal was opened by Stephen Cohen, that when you dig down into the PayPal records, you can see the contacts directly to Stephen Cohen. You can see transfers from this PayPal account to Mr. Cohen's son, Daniel Cohen, with notes like, I love dad. When you look at the Wells Fargo bank account that originally starts this in February of 2009, Michael Cohen goes to the bank, uses his driver's license, uses his name, but then, unexplained in this case, is how Stephen Cohen's taxpayer identification number gets placed onto that bank account. That account ultimately runs over a hundred thousands of dollars through it. Transfers then go down into Mexico. We see money being pulled out and go through. Forgive me, I know you've got a litany of these things to go through, but I guess first question I would like to ask is, the amounts alleged here, some of the smallest, twenty two dollars and fifty five cents, are miniscule. Why do you want to appeal to the Ninth Circuit Court of Appeal, dealing with such small sums? Is this just so, you're kind of so angry that you just want to do everything you can to get every nickel? Is that what's going on here? It's totally not true, your honor. The twenty two dollars seemed to be an address to the direct transfers that needed to be alleged. We don't agree that that's the only way you can find a claim under the Uniform Fraudulent Transfer Act. If you look at the totality of the money that we're talking about... That's not the way that act works, is it? Don't you have to show, with respect to specific dollars or assets you locate, each of the not under a... if you conspire with the debtor, then you don't have... But the conspiracy charge is based upon underlying charges, is it not? Don't you have to prove specific violations of the act, each element of the act, before you can get to conspiracy? Well, you can conspire to do the act, so do we need to show that the Sure. Is that what was before the lower court with Judge Coe? No. The sole issue was whether there was a direct transfer. But she identified less than thirty thousand dollars, or you identified less than thirty thousand dollars, in five transactions, one as small as twenty two dollars and fifty five cents, in collecting on whatever the balance is of a multimillion dollar judgment. I agree, Your Honor, the judgment is a huge number, but the issue here is that Mr. Cohen, Stephen Cohen, the debtor, continues to use people to move money. Now, we may have only identified certain amounts, like twenty two dollars in an instant, thirty thousand dollars, but the total amount of money that came into these companies and then was transferred into this purported bank in Mexico, which we provided evidence that Stephen Cohen owns, formed, acts as an officer and director, again going back to this five-time convicted felon issue, we're showing all the money being transferred into Mexico. So while our brief tried to focus on certain issues and amounts of money, we're talking about the entire sum. We're using that evidence in part to show. Counsel, with respect, it sounds like you're saying we want you to analyze whether the act has been violated by looking at this big gob, each of these various components in it, and if you are able to cobble together all of the elements in the aggregate, that's enough. Isn't that your position? I think the position, Your Honor, is that the only allegation that there be a direct transfer, which we've shown is incorrect, should not, should be over. In a legal sense, or you're saying that you've factually disputed it? We created certainly enough facts to dispute. On the one hand, we've disputed where the court says is just small amounts, but we've shown that it, that there's evidence that there are direct transfers. But the was entered is that we have to show a direct transfer. We can show it as partial evidence, but the conspiracy, the fact that Michael Cohen conspired with his uncle to then move money through the U.S. into Mexico, through Mr. Stephen Cohen's direct accounts, all we're trying to do with summary judgment is to show that we have shown direct transfer if you need that. We don't believe you need that. Well, let me ask you a different question. Let's suppose that we send this back for trial. What is the judgment that the district court will issue at the conclusion of that trial under your CUFTA claim? That Michael Cohen directly or in conspiracy with Stephen Cohen moved over a hundred and seventy thousand dollars both through the Wells Fargo accounts and the PayPal accounts in order to prevent Mr. Cohen from being able to levy upon those funds. So you think that this evidence that you showed to the district court is sufficient to declare that every single transfer of money among and between all these entities and shell corporations is actually all Stephen Cohen's money and it's just being moved around like peas in a pod in order to prevent creditors from getting it and therefore a judgment should issue for each and every transaction without regard to whether it can be directly linked to Stephen Cohen or not. Is that what you're asking for? If these are Stephen Cohen's companies and he's forming these entities to move money through the U.S. into Mexico, the fact that there's a company and whatever reason the money comes in, when it comes into those accounts, that's money that Mr. Kremen, if it was in Stephen Cohen's personal name, that's money we would be able to levy upon. But I thought the evidence showed that one of the reasons that a lot of these transactions were in such small amounts like twenty two dollars and fifty five cents was because they were pharmaceutical sales from a Mexican company that sells prescriptions. Sure there's an illegal pharmacy being run selling drugs into the U.S. but still if Mr. Cohen owns that company and money comes into that company as one of his alter ego or related entities. So your position is under the CUFTA that if a U.S. citizen purchases a twenty two dollar prescription from a Mexican pharmaceutical company and that money gets transferred into a PayPal account, that's actually Stephen Cohen's money and therefore we should grab that too. Well I think the problem, the answer is no, and the problem I have with that particular hypothetical is let's say this entity and Mr. Cohen are the same which is what we allege. Let's say Mr. Cohen receives twenty two dollars from somebody that goes into his account and let's say that Mr. Kremen, let's say it's not twenty two dollars it's a thousand dollars, Mr. Kremen levies on that account regardless of whether Mr. Cohen or this Mexican entity sold it when it comes into the account. That's money now that Mr. Kremen should be able to levy upon whether or not it came into his account. Why, what's your best evidence that these transfers were fraudulent or done with purposes to evade you know the collection efforts? You've shown the transfers I guess but what's your best evidence to point to to say that they were done fraudulently or with the exact purpose to avoid collection? Starting with the fact that Mr. Michael Cohen opened this Wells Fargo bank account using Stephen Cohen's tax ID number. That's a start. Otherwise, because this is a fraudulent transfer with Stephen Cohen who's been before this court before on these, you have to piece together. He uses the same addresses, the same IP addresses to access these bank accounts. Money is going directly to Mr. Cohen and disappearing into Mexico. Frankly, the defense, the documents submitted in opposition to our summary judgment, I think even more bolsters our position that as opposed to the clear and voluminous evidence we provided. Yes, you have to draw a lot of inferences together but that... What I don't see here counsel is what I would expect in a criminal RICO prosecution for fraud. I don't see the results of a forensic accountant who basically traces each of the transactions so that it can be clearly traced back to Stephen Cohen. What I see is you throwing up a whole bunch of very suspicious items of evidence and then asking the court to remove Stephen Cohen. Even under a more generous preponderance of the evidence standard of proof, I don't know that you make it on this record. I think that's the problem that Judge Koh was having in saying you just didn't establish a prima facie case here. I have a difficult time with the court's suspicious evidence we provided. We provided subpoenas from Google, from the bank, from the bank. We didn't find the curtain as far as what addresses were being used, where it was happening, where money went. Did we have access to Mexican banks in order to pull those records? No, that's part of this scam. Well, it's part of it. It's part of the problem that makes it difficult to investigate and to produce admissible evidence that establishes your case. That's the burden you have and the District Court held primarily we didn't show evidence of direct transfers. Again, we respectfully disagree. One, that we didn't show it. Two, that there's some de minimis standard. And three, whether that's the only requirement when you can conspire to move money. Maybe it didn't go into Michael Cohen's pocket, but if he tried with Mr. Cohen to use his accounts to move money through the U.S. back into Mexico into his account, I believe that's sufficient to have gotten around the summary adjudication standards. Thank you. Okay, thank you very much. Let's hear from Mr. Cohen's lawyer. May it please the Court, Your Honor. My name is Gerald Chilton Jr. and I represent the Appellees. Today I'll make three arguments to you why this Court should affirm the District Court's order of summary judgment. Today, the appellant can't prove any of the allegations of the complaint. I listened to your questions in the prior oral argument, and if you read the complaint, there are specific allegations. All of them involved one account, FNB Pay's Wells Fargo account. Alleged transfers into that account by Stephen Cohen, and then we'll go so far as to say it was someone with Stephen Cohen's money. He couldn't prove it at the first summary judgment, and he can't prove it at the second summary judgment. There were simply no transfers of property of Stephen Cohen into the Wells Fargo account. Then we turn to what he didn't allege in the complaint, 9b, the Federal procedure required pleading fraud with specificity, and three other transfers. First of all, he didn't plead those, but the District Court said even if you had pled that there were alter egos of Stephen Cohen that transferred money, there's no showing that a fair-minded jury could rule that they were made to intent to fraud or hinder, Mr. Kremen. And that's one of the elements, is it not, of the act that they have to prove? Yes. On the issue of the corporation, I noticed in this Mendocino Mexicana $25,000 account, there was no, I don't think, any allegation that this was a misuse of the corporation where it's an alter ego or something like that. Is that what you were talking about in connection with Judge Koh's question? Yeah. Judge Koh talked about about four transfers, Your Honor. One was the $22.55. That was a direct transfer, not pled, but it was a direct transfer. Then Judge Koh addresses the Mendocino, Mexico transactions. It's clear that Mendocino, Mexico was owned by Baja Data Center, which was owned by people other than Stephen Cohen. Cohen had, what, 2% interest according to the allegations? But that's minuscule, Your Honor. I understand, I'm just saying. That may have been. I'm just pleading his interest was not a controlling interest, at least as an obvious matter. Yes, Your Honor. When I started practicing law 45 years ago in Arizona, the law was to incorporate a corporation, you had to have two incorporators. Guess who the other incorporator was to a man that wanted to incorporate something? It was the attorney. Immediately upon the formation of the corporation, the incorporators held a meeting, the attorney withdrew as an incorporator, the directors were elected, and the company went on. I can't address Mexican law, I can only look at what is reasonable. A man that owns 1% or 2%, he doesn't control the corporation, and under California law, he does not. It's a matter of law. Bottom line, from your perspective, taking the illustration of Mendocino, Mexico, the monies involved were transferred to the corporation, the corporation was owned, I gather, by their own pleadings, was owned by another corporation. Mr. Cohen was not one of the shareholders of that corporation, and the corporation owned, I think, 98% of the shares, and then there were 2% of the shares owned by Mr. Cohen. Is that right? That was the initial pleading, Your Honor. We didn't look at our evidence, the judge didn't look at any of the evidence, and shouldn't have, that we presented with respect to those issues. The Court said, assuming everything they've alleged is true in their, what they raised for the first time in response to the motion for summary judgment, they didn't allege conspiracy in their objection, never raised it, you have it for the first time here before you, the judge said, under California law, there was no unity of interest between the alleged shareholder and the corporation, that it became one. One person isn't the corporation. Even if, you know, you look at Mendocino, Mexico, it sold something, so it transferred an asset out, it got money back, and the money went there. If they want to go after Mendocino, Mexico, and claim that it's really Stephen Cohen, let them go to Mexico and do that, but there's no evidence of that, Your Honor. Bottom line, Judge Coe took the position that there was simply a failure of proof here, is that correct? Yes, Your Honor. If you look in the brief of the appellants at page 14, when they're talking about all these nebulous facts out in the world, they talk about a transfer at one time to the stepdaughter, $4.931 million, to an ex-wife, $1.1 million, to a former attorney, $800,000. Maybe that might show intent. $22.55, no reasonable jury could find there was an integer delay, Mr. Kremen. The $845 or so that was Baja data center money, that doesn't show an intent to harm. Nothing that they've shown as their evidence raises to any level that the fair-minded jury could find by a preponderance of the evidence that a fraudulent transfer occurred. Everything is nothing more than Mr. Kremen wanting to go after the Cohen family, Your Honor. Well, there is a lot here in terms of very suspicious overlaps involving credit cards, common addresses in Tijuana, Mr. Stephen Cohen's name showing up on cell phones and ISP addresses, and there is the fact that he is a previously convicted felon who's been convicted of fraud before. A jury could certainly consider all of that in trying to determine whether or not there is a unity of interest here and that he is, in effect, controlling all these entities through which this money is passing, couldn't it? Your Honor, we get back to the complaint. My client was charged with defending certain specific prayers for relief and claims. And if you read the complaint, none of that is alleged. Under 9b, they have to allege the acts of alter ego. Under this Court's previous decisions, they had to allege that. They didn't. Everything went to the Wells Fargo account. So what I'm saying, Your Honor, it's irrelevant and immaterial what you just said to the issues before this Court. In the complaint, are those elements pled and they're not? Okay. Anything else? I think we've heard enough. Thank you. We request that you affirm the order. Thank you very much. Mr. Dillon, I'll give you a minute on rebuttal. Thank you, Your Honor. I appreciate that. Your Honors, the concern I have and hear from the Court is that somehow the Uniform Fraudulent Transfer Act or common law fraud might have a floor as far as how much money needs to be alleged. What you're hearing from us is the same concern, I think, that you heard from Judge Coe, that if you're going to proceed on a theory of conspiracy and alter ego, you've got to prove it and you've got to elicit sufficient evidence to establish a prima facie case of the two under the Fraudulent Transfer Act. I'm looking at what we cited in Hickey, SEC v. Hickey. First there is such a unity of interest and ownership that the individuality or separateness of the said person and corporation has ceased. And secondly, an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice. And those are the two elements that you didn't plead. I see I'm out of time here. Can I just answer the question? Your Honor, the issue is we've sued Michael Cohen, not Stephen Cohen in this case. So we didn't need to specifically plead that Michael Cohen was the alter ego. That's part of our other evidence that he's conspiring with, we didn't say Stephen Cohen directly, but Stephen Cohen and others, which we have alleged. I just asked the court, the evidence is there. It's convoluted and it's difficult. We've tried to piece it together. There are strings that we have pulled with, whether it's $22, $900, some of the direct transfers, we have pulled those strings. And I do believe this case does fall apart and sets forth yet again another fraudulent transfer scheme with Stephen Cohen, this time with his nephew, Michael Cohen. Thank you. Okay, thank you very much. The case just argued is submitted.
judges: Tallman, Smith, Murguia